On March 9, 1999, appellee, the Stark County Department of Job Family Services, filed a complaint for permanent custody of six McDaniel/Evans children. Pertinent to this appeal are Zachary McDaniel born September 18, 1994, Jolene McDaniel born March 6, 1996 and Josette Evans born March 13, 1997. Mother of the children is appellant, Debra Evans. Father of Josette is appellant, Joe Evans. An adjudicatory hearing was held on May 3, 1999 wherein appellants stipulated to neglect. Appellee withdrew its motion for permanent custody. Three of the children were placed with relatives. The three children involved in this appeal were placed in appellee's temporary custody. On January 28, 2000, appellee again filed a motion for permanent custody. Hearings were held on April 19, and July 12, 2000. By judgment entry filed July 24, 2000, the trial court awarded permanent custody of the children to appellee. Appellant father filed an appeal on August 14, 2000. Appellant mother filed an appeal on August 24, 2000. This matter is now before this court for consideration. Father's assignments of error are as follows:
 I. THE TRIAL COURT COMMITTED ERROR WHEN IT GRANTED THE STARK COUNTY DEPARTMENT OF HUMAN SERVICE'S MOTION FOR PERMANENT CUSTODY AND TERMINATED THE PARENTAL RIGHTS OF THE APPELLANT BECAUSE THE DECISION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 II. THE TRIAL COURT COMMITTED ERROR WHEN IT FOUND THAT THE STARK COUNTY DEPARTMENT OF HUMAN SERVICES MADE REASONABLE EFFORTS AS REQUIRED BY O.R.C. SECTION 2151.419 TO RETURN THE CHILD TO THE CHILD'S HOME.
 III. THE TRIAL COURT COMMITTED ERROR WHEN IT FOUND THAT JOSETTE EVANS CANNOT AND/OR SHOULD NOT BE PLACED WITH EITHER PARENT AT THIS TIME OR IN THE FORESEEABLE FUTURE.
Mother's assignments of error are as follows:
 I. THE TRIAL COURT'S ORDER SHOULD BE VACATED BECAUSE THE TRIAL COURT COMMITTED PREJUDICIAL ERROR BY AWARDING PERMANENT CUSTODY OF ZACHARY, JOLENE, AND JOSETTE TO THE STARK COUNTY DEPARTMENT OF HUMAN SERVICES RATHER THAN TO THE BIOLOGICAL MOTHER, DEBRA EVANS, WHEN SUCH ORDER WAS NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE TO BE IN THE BEST INTERESTS OF THE CHILD.
 II. THE TRIAL COURT COMMITTED ERROR WHEN IT FOUND THAT THE STARK COUNTY DEPARTMENT OF HUMAN SERVICES MADE REASONABLE EFFORTS AS REQUIRED BY OHIO REVISED CODE SECTION 2151.419 TO RETURN THE CHILDREN TO THE CHILDREN'S HOME.
 III. THE TRIAL COURT COMMITTED ERROR WHEN IT FOUND THAT ZACHARY McDANIEL, JOLENE McDANIEL, AND JOSETTE EVANS CANNOT AND/OR SHOULD NOT BE PLACED WITH THEIR MOTHER AT THIS TIME OR IN THE FORESEEABLE FUTURE.
 FATHER'S I, II, III, AND MOTHER'S I, II, III
All of the assignments of error claim the trial court erred in granting permanent custody of the children to appellee based upon the evidence presented. We disagree. Because the same testimony was offered against both parents, we will address the appeals together. As an appellate court, we neither weigh the evidence nor judge the credibility of the witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. Cross Truck v. Jeffries (February 10, 1982), Stark App. No. CA-5758, unreported. Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. C.E. Morris Co. v. Foley Construction (1978), 54 Ohio St.2d 279. R.C.2151.414(E) sets out the factors relevant to determining permanent custody. Said section states in pertinent part as follows: (A) In determining at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353
of the Revised Code that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:
 (1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties;
 (2) Chronic mental illness, chronic emotional illness, mental retardation, physical disability, or chemical dependency of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year after the court holds the hearing pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code;
 (4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child; (16) Any other factor the court considers relevant.
R.C. 2151.414(B) enables the court to grant permanent custody if the court determines by clear and convincing evidence that it is in the best interest of the child. R.C. 2151.414(D) sets out the factors relevant to determining the best interests of the child. Said section states relevant factors include, but are not limited to, the following:
 (1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child;
 (2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 (3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 (4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 (5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.
 FATHER'S CASE
In its judgment entry filed July 24, 2000 at Finding No. 7, the trial court determined the following: Father, Joe Evans, admitted to drug problems and a relapse with drugs in March, 2000. He lives with another woman and maintains that he is able to share expenses. However, he is unemployed and his name is on no lease or utility. He has attempted parts of the case plan but the Court finds that he is unable to parent due to unresolved substance and mental issues.
There was a major dispute among the parties as to what "adequate housing" meant. Appellee's caseworker assigned to the case, Jeanette Lewis, described it as follows: Joe and Debra will pay their rent and utilities each month in a timely manner, worker will assist the family in emergency situations to prevent the family from losing their housing. Worker will contact landlord periodically to insure that Joe and Debra are paying their rent on time and are not in danger of being evicted, and monthly home calls and periodic contact with the landlord.
* * *
Well, if Mr. Evans would have indicated to me that he had his own housing where he was paying rent then I would have asked Mr. Evans, well I need to see a copy of your rental agreement, I need to see utilities in your name and then that would have indicated to me that Mr. Evans had indeed established a home for himself * * *. April 4, 2000 T. at 26 and 27, respectively.
Ms. Lewis described father's living conditions and explained that they did not fulfill the requirements of the case plan as follows: Well, the only conclusion I can come to is what I haven't received in my hand, and that is a copy of a rental agreement and that is a copy of him paying rent, rent statements, utilities being in his name to show or to demonstrate that he's in a position to care for himself, let alone to take care of his child, and if he would have, presented all this information to me I don't think you would be here questioning me now because it would be evident that he was in a position to care for himself. April 4, 2000 T. at 23-24.
There was no evidence to suggest, even accepting the shared housing scheme with Wanda Williams, that father was able to be self sufficient in the care of his child. Father testified he has resided with Ms. Williams since August of 1999 but was unable to furnish a signed lease or shared utility receipts. April 4, 2000 at 39, 48; April 19, 2000 T. at 74. Miss Williams testified to the living arrangements. April 4, 2000 T. at 210. The issue of adequate housing given this disputed testimony lies within the sound discretion of the trial court to determine which evidence is credible and in conformity with the case plan. In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217 . There was sufficient evidence of father's alcohol and cocaine addictions that had been in remission until March of 2000. April 4, 2000 T. at 60, 88. Kenneth Swickard of Quest Recovery Services evaluated father and determined he had a high risk for relapse. Id. at 88, 90. Father failed to complete any anger management programs, was belligerent at counseling sessions and appeared at one session with alcohol on his breath. Id. at 117-118, 120, 147. Given all of this testimony, coupled with the fact that father appeared to be unprepared to provide for the child on his own, we cannot say the trial court erred in its decision. MOTHER'S CASE In its judgment entry filed July 24, 2000 at Finding No. 6, the trial court determined the following: Mother, Debra Evans, has been involved with SCDHS since 1994. She has given birth to a total of nine (9) children and has custody of none (0) of them. Throughout this case Mother has continuously failed to complete any of her case plan objectives. Mother has gone through various periods of time with no suitable housing, unstable employment, inappropriate parenting, domestic violence, and drug involvement. Dr. Bello testified that she would have difficulty parenting children. Carol Hershey of Goodwill Parenting testified that she had no independent housing and that the concerns of Mother had back in 1996, when she first went to the parenting classes are the same concerns that she had this time around. Barbara Temple testified that Mother was not consistent with attendance for the Renew Program. The Court feels that she cannot parent these children.
Mother provided a home for the caseworker's investigation which was found to be "unhealthy" for children given its environment. April 4, 2000 T. at 15. When asked at this hearing whether or not she had housing, mother responded "I kinda do," but could not provide any proof. Id. at 8. At the hearing on April 19, 2000, mother claimed to have just moved into housing on April 8, 2000. April 19, 2000 T. at 69-70. The major evidence in mother's case was that she was not equipped to properly parent children. Dr. Gerald Bello, a psychologist who evaluated mother, testified to a "lack of ability to anticipate developmental needs" of the children. April 4, 2000 T. at 68. Further, Dr. Bello opined mother has "difficulty focusing on life, dealing with psychic turmoil, she has mood swings, she has depressive periods and periods of anger and rage and that she may act out in excess * * *." Id. at 75. Dr. Bello testified mother would find it extremely hard to parent with one never knowing whether she was parenting or the child was parenting. April 19, 2000 T. at 14. Carol Hershey of Goodwill Industries testified mother's attendance at parenting classes was sporadic and absences were a problem. Mother received the lowest certificate. April 4, 2000 T. at 161-163; April 19, 2000 T. at 33-36. Barbara Temple of Domestic Violence Project Renew testified mother's attendance was "fair or poor. Progress the same because of attendance." April 4, 2000 T. at 109. Given the direct testimony on the lack of mother's ability to parent and her inability to provide satisfactory housing, we find the trial court's decision is supported by the evidence.
 BEST INTERESTS
The children are adoptable and available for placement. April 19, 2000 T. at 120-124. No effort for housing has been established by the parents over the entire period of the case plan. Mother has had nine children, all of whom have been placed outside the home. No positive available alternative was presented to the trial court nor was there any evidence of any change of condition or lifestyle by either parent in the near future. Upon review, we find the trial court did not err in granting permanent custody of the children to appellee. The assignments of error are denied.
The judgment of the Court of Common Pleas of Stark County, Ohio, Juvenile Division is hereby affirmed.
Farmer, J. Gwin, P.J. and Wise, J. concur.